# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN R. REDMAN,           )
                                )

     Plaintiff,             )
                                )

     v.                   )     **Case No. CIV-12-1039-R**
                                )

CAROLYN W. COLVIN,        )
**Acting Commissioner of the Social**    )
**Security Administration,**[1]      )
                                )

     Defendant.         )

## REPORT AND RECOMMENDATION

Section 1382c(a)(3)(J) of Title 42, United States Code, provides that an individual is not disabled for purposes of Subchapter XVI of the Social Security Act if drug addiction or alcoholism ("DAA") is a contributing factor material to a determination of disability. Upon consideration of the application of Plaintiff Steven R. Redman for supplemental security income ("SSI") under Subchapter XVI, the Commissioner found that Mr. Redman was disabled—but his DAA was a material contributing factor to his disability. Pursuant to § 1382c(a)(3)(J), the Commissioner denied SSI.

Having considered the testimony and exhibits in the record below, as well as the arguments of counsel, the undersigned concludes that the Commissioner did not apply the correct legal standards in finding that DAA was a material contributing factor to Mr. Redman's disability, and that such finding is not supported by substantial evidence in the

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for the former Commissioner as the defendant in this suit.

record as a whole. For the reasons stated herein, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## PROCEDURAL HISTORY

Plaintiff filed this, his third application for SSI, on July 22, 2009, alleging a disability beginning June 1, 2009. R. 108.[2] Plaintiff's application was denied initially and on reconsideration at the administrative level. *Id.* at 48, 49. At his request, Plaintiff appeared for hearing before an administrative law judge ("ALJ") on February 10, 2011. *Id.* at 12, 27-47. The ALJ issued an unfavorable decision on March 11, 2011, concluding that Plaintiff had not been disabled under the Social Security Act at any time since July 22, 2009. *Id.* at 9-22. The Appeals Council denied Plaintiff's request for review, *id.* at 1, and the March 11, 2011 determination of the ALJ became the Commissioner's final decision. *See* 20 C.F.R. § 416.1481.

Thereafter, Plaintiff commenced this appeal. The matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b). The Commissioner has answered and filed the administrative record. The parties have briefed their positions, and the matter is now at issue.

## THE ADMINISTRATIVE DECISION

When an ALJ finds that a claimant is disabled, but there is medical evidence of the claimant's DAA in the record, the ALJ must determine whether the DAA is a material contributing factor to the claimant's disability. 20 C.F.R. § 416.935(a). In making this

_____

[2] References to the administrative record, Doc. No. 16, are as "R. ___."

determination, the "key factor . . . is whether [the ALJ] would still find [claimant] disabled if [claimant] stopped using drugs or alcohol."  *Id.* § 416.935(b)(1).

The ALJ must evaluate which of the claimant's physical and/or mental limitations, upon which the threshold disability determination was based, would remain if the claimant stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling.  *Id.* § 416.935(b)(2).  If the ALJ finds that a claimant's remaining limitations would not be disabling, then the DAA is a material contributing factor to the claimant's disability and the ALJ must determine the claimant is not disabled.  *Id.* § 416.935(b)(2)(i).  On the other hand, if the ALJ finds that the remaining limitations would in and of themselves be disabling, then the ALJ must determine that the claimant is disabled.  *Id.* § 416.935(b)(2)(ii).

Here, the ALJ followed the initial five-step sequential evaluation process to determine whether Plaintiff was disabled and therefore entitled to SSI.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 22, 2009, the application date.  R. 14.  At step two, the ALJ determined that Plaintiff has severe impairments consisting of history of back injury and surgery, history of migraine headaches, hepatitis, depression, and history of drug and alcohol abuse.  *Id.*  At step three, the ALJ found that none of Plaintiff's impairments meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 15.

At step four, the ALJ considered Plaintiff's residual functional capacity ("RFC") based on all of his impairments.  The ALJ determined that Plaintiff retains the exertional

capacity to perform light work, limited by his ability to stoop, kneel, and crouch only occasionally. Considering the combined effects of all of Plaintiff's severe impairments, including substance use disorder, the ALJ determined that Plaintiff would be unable to "complete a normal work day without interruptions from psychologically based symptoms" or "to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 16. The ALJ determined that this would prevent Plaintiff from returning to his past relevant work, which was classified as medium skill level. *Id.* at 18.

At step five, the ALJ determined that, in view of Plaintiff's age, education, work experience, and RFC, there exists no work in significant numbers in the national economy that Plaintiff can perform. *Id.* The ALJ concluded that "[a] finding of 'disabled' is therefore appropriate." *Id.* at 19. Thus, the ALJ made a threshold finding that if the totality of Plaintiff's impairments is considered, Plaintiff is disabled.

Next, in light of the indication of DAA, the ALJ repeated the five-step sequential evaluation under the hypothesis that Plaintiff "stopped the substance use." R. 19. For steps four and five, the ALJ reassessed Plaintiff's RFC on the basis of those physical and mental limitations that he believed would remain if Plaintiff stopped using drugs or alcohol. *Id.* at 20-22. The ALJ determined that, while Plaintiff's ability to concentrate and work without interruption still would be diminished absent the use of alcohol and drugs, Plaintiff would be able to sustain the concentration necessary for unskilled work. *Id.* at 20. As a result, at step four the ALJ found that Plaintiff would not have the RFC to perform his past relevant work. *Id.* at 21. But at step five the ALJ determined that Plaintiff – in view of his age, education, work experience, and RFC, if evaluated under the assumption that Plaintiff

4

stopped using alcohol and drugs – could make a successful adjustment to work that exists in the national economy. Relying on the testimony of a vocational expert, the ALJ found that if Plaintiff stopped substance abuse, he would be able to perform the requirements of representative occupations such as plastics worker, package machine operator, and mail clerk. *Id.* at 22.

The ALJ therefore concluded, "Because the claimant would not be disabled if he stopped the substance use, the claimant's substance use disorder[] is a contributing factor material to the determination of disability[.]" *Id.* (citation omitted). Based on this conclusion, the ALJ found that Plaintiff had not been disabled within the meaning of the Act at any time since his application was filed and, accordingly, denied SSI. *Id.*

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has

been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff raises five claims of error on appeal. First, Plaintiff contends the ALJ erred in failing to address Plaintiff's request to amend his alleged onset date of disability in his written decision. Plaintiff next contends that the ALJ's conclusion was not supported by substantial evidence because (2) the ALJ erroneously relied on his own medical opinion and (3) the ALJ relied on vocational expert testimony that was based on a faulty hypothetical premise. Fourth, Plaintiff argues that the ALJ failed to properly assess Plaintiff's credibility, and, finally, that the ALJ violated the "treating physician rule" by failing to give proper weight to the opinion of Plaintiff's treating physician. *See* Pl.'s Br. at 5-20 (Doc. No. 17).

## ANALYSIS

**I.** **Whether the ALJ erred in failing to address Plaintiff's request to amend his disability onset date**

As noted above, Plaintiff's third SSI application was filed on July 22, 2009 and recited that his disability began on June 1, 2009. R. 108. At the administrative hearing before the ALJ, Plaintiff asserted, through his attorney, that he had filed two previous applications for SSI, both of which were denied at the administrative level and neither of

which was appealed. *Id.* at 30. With respect to the first application, Plaintiff explained that he did not appeal because delivery of the notice of denial was delayed for two months when the letter was inadvertently taken by Plaintiff's brother. *Id.* at 31, 39. When Plaintiff learned of the denial, he belatedly requested that his claim be heard by an ALJ, but the request – following a hearing on the reason for delay – was denied. *Id.* at 39. The denial of the first application took place approximately five years prior to the February 10, 2011 administrative hearing on the third application. *Id.* With respect to the second application, Plaintiff's attorney acknowledged that an appeal was not timely filed "through the fault of myself and my staff." *Id.* at 30. The record does not reveal when the second application was denied.

In view of this information, Plaintiff requested at the hearing that his onset date be amended to May 1, 2006 "or thereabouts." *Id.* The ALJ responded in the affirmative, indicating that he would accept Plaintiff's alleged onset date as May 1, 2006. *Id.* at 31. In his written decision, however, the ALJ did not address Plaintiff's request for an earlier onset date. The ALJ instead noted the allegation that Plaintiff's disability began June 1, 2009. *Id.* at 12. Plaintiff asserts that the ALJ's failure to address his request to amend the onset date is an error of law. Pl.'s Br. at 6 (citing Soc. Sec. Admin., *Program Operations Manual*, ch. DI (hereinafter "POMS"), subchs. 25501.200 et seq. (May 16, 2013)).

Guidance from the Social Security Administration (or "SSA") makes clear that a claimant's "onset date" or "established onset date" is not properly determined by the stipulation or suggestion of the parties, but through the ALJ's consideration of numerous,

discrete factors.  *See* POMS § 25501.200(A)(1); SSR 83-20, 1983 WL 31249 (Aug. 20,

1980).  Further, on an application for SSI, such as Plaintiff's

> there is no retroactivity of payment.  Supplemental security income (SSI)
> payments are prorated for the first month for which eligibility is established
> after application and after a period of ineligibility.  Therefore, except for
> certain cases of aliens where an exact onset date of disability must be
> determined for eligibility purposes, the only instances when the specific date
> of onset must be separately determined for [an SSI] case is when the onset is
> subsequent to the date of filing or when it is necessary to determine whether
> the duration requirement is met.

SSR 83-20, 1983 WL 31249, at *1; 42 U.S.C. § 1382(c)(7) (prescribing that an application

for SSI shall be effective on the *later* of the first day of the month following the date such

application is filed *or* the first day of the month following the date such individual becomes

eligible for such benefits).  Stated differently, the exact onset date is immaterial in the

context of an application for SSI unless (a) the onset date is subsequent to the making of the

application, or (b) there is a question as to whether the claimant's alleged disability has

rendered him or her unable to engage in substantial gainful activity for a continuous period

of at least 12 months.  *See* 42 U.S.C. § 1382c(a)(3)(A).  As neither of these scenarios exists

here, there was no need for the ALJ to establish an exact onset date of disability.  By statute

and regulation, Plaintiff is ineligible for payment of SSI benefits prior to August 1, 2009.[3]

Nor did the ALJ's treatment of Plaintiff's onset date have any negative impact on the

ALJ's sequential evaluation of Plaintiff's disability.  Section 416.912(d) of Chapter 20,

Code of Federal Regulations, required the ALJ to develop Plaintiff's "complete medical

---

[3] The ALJ specifically recognized this reality in his written decision.  *See* R. 12 (citing 20
C.F.R. § 416.335 ("If you file an application after the month you first meet all the other
requirements for eligibility, we cannot pay you for the month in which your application is
filed or any months before that month.")).

history for at least the 12 months preceding the month in which [Plaintiff] file[d] [his] application unless there is a reason to believe that development of an earlier period is necessary. . . ." 20 C.F.R. § 416.912(d). Rather than limiting Plaintiff's presentation of evidence to what occurred after July 2008 (12 months preceding Plaintiff's application), the ALJ permitted Plaintiff to present exhibits and testimony concerning the entirety of his alleged period of disability. *See* R. 12 (stating that the ALJ "considered the complete medical history consistent with 20 CFR 416.912(d)"). The record includes medical documents dating back to at least 2005. *See*, *e.g.*, *id.* at 241. At the hearing, Plaintiff testified to events and ailments as far back as 1991. *See id.* at 32. In his written decision, the ALJ did not disregard the pre-July 2008 evidence, but cited such evidence numerous times. *See*, *e.g.*, *id.* at 15, 16, 17.[4]

---

[4] It is conceivable that the ALJ could have reopened one or both of Plaintiff's prior SSI applications, thereby potentially awarding Plaintiff benefits from the May 1, 2006 onset date. Any refusal to do so would not be reviewable by this Court, however. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Regardless, the record available to the undersigned would not support reopening. By regulation, a decision may be reopened within 12 months for any reason, within two years of the date of the notice of the initial determination for good cause, and at any time if the decision was obtained by fraud or similar misconduct. 20 C.F.R. § 416.1488. The denial of Plaintiff's first application occurred well over three years prior to the administrative hearing on the third application. R. 39. This means that at that hearing the ALJ could only have reopened the first application if the prior unfavorable decision was obtained by fraud—an assertion Plaintiff does not make or support. The record does not state, and Plaintiff provides no information regarding, the date of the denial of Plaintiff's second application. Even if Plaintiff had shown that he requested reopening within two years of that denial, however, the explanation of his attorney's delinquency would not appear to constitute good cause as required by the controlling regulation. *See* 20 C.F.R § 416.1489 (providing that good cause exists when new and material evidence is furnished, when a clerical error was made, or when the evidence that was considered "clearly shows on its face that an error was made").

In short, the approach taken by the ALJ – to use the onset date directed by statute but consider evidence for the full period of disability alleged by Plaintiff – was correct and appropriate. There is no showing of any prejudice or harm specifically resulting from the ALJ's treatment of the onset date. Thus, even if the ALJ had erred, the error would be harmless and reversal would not be required. *See Reid v. Chater*, 71 F.3d 372, 375 n.1 (10th Cir. 1995).

## II.     Whether the ALJ erred in determining that Plaintiff's substance use is a contributing factor material to Plaintiff's disability

Plaintiff contends that the ALJ relied on facts not in evidence, or what Plaintiff characterizes as the ALJ's "own medical opinion," in determining that Plaintiff was not disabled. Pl.'s Br. at 6. This is an argument that the ALJ's factual findings were not supported by substantial evidence in the record, and, thus, the undersigned applies the familiar standard used to review a substantiality claim. *See*, *e.g.*, *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

As noted above, an individual cannot be considered to be disabled if drug abuse or alcoholism is "material" to that consideration. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(a). The SSA has published policy interpretation rulings, the latest version of which is SSR 13-2p, 78 Fed. Reg. 11939 (Feb. 20, 2013), setting forth the process to be followed

in conducting a DAA materiality inquiry.[5]  Further, the SSA has provided guidance on the considerations for a DAA materiality inquiry through its Program Operations Manual System.  *See* POMS § 90070.050.

Section 416.935, SSR 13-2p, and POMS 90070.050 set forth the applicable process for an adjudicator to determine whether DAA is a material contributing factor to a claimant's disability.  First, the ALJ must decide if the claimant is disabled, following the general disability case development and evaluation procedures and considering the effects of DAA.  POMS § 90070.050(B)(1).  Second, the ALJ must decide if there is "medical evidence of DAA."  *Id.* § 90070.050(B)(2).  Finally, if there is medical evidence of DAA, the ALJ must re-evaluate the claimant as if he had stopped using drugs and alcohol, and on that basis decide whether the DAA is a contributing factor material to the disability.  *Id.* § 90070.050(B)(3), (D); 20 C.F.R. § 416.935(b)(2); SSR 13-2p, 78 Fed. Reg. at 11941-42. Stated differently, a DAA materiality determination is made only when "the claimant is disabled considering all impairments" and the ALJ has "medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder."  SSR 13-2p, 78 Fed. Reg. at 11941; *see also Salazar*, 468 F.3d at 622-26; *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

---

[5] Social Security Ruling 13-2p was published on February 20, 2013 and, thus, came into effect after the ALJ's decision in this case was issued.  Prior to the publication of SSR 13-2p, the principles discussed herein were substantially set forth in a prior policy interpretation ruling, SSR 82-60, as well as a "teletype" issued by the Commissioner, Emergency Message EM-96200.  *See Salazar v. Barnhart*, 468 F.3d 615, 622-23 (10th Cir. 2006).  SSR 13-2p superseded both SSR 82-60 and EM-96200.  For clarity, the undersigned has referred to SSR 13-2p in this Report and Recommendation; however, it should be recognized that the ALJ did not have the benefit of that ruling when making his decision.

"Medical evidence of DAA" is a specifically defined term for purposes of the Act. SSR 13-2p, 78 Fed. Reg. at 11944; POMS § 90070.050(C)(1)(a). It means that the evidence is from "an acceptable medical source" and "[i]s sufficient and appropriate to establish that the individual has a medically determinable substance use disorder." POMS § 22505.003(B)(1); POMS § 90070.050(C)(1)(a). "[A] claimant has DAA only if he or she has a medically determinable Substance Use Disorder" as defined in *Diagnostic and Statistical Manual of Mental Disorders* (or "DSM"). SR 13-2p, 78 Fed. Reg. at 11941. "In general, the DSM defines Substance Use Disorders as maladaptive patterns of substance use that lead to clinically significant impairment or distress." *Id.* at 11940 (footnote omitted) (citing *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text rev. 2000) ("DSM-IV-TR")). As explained further by the SSA:

> (i)      As for any medically determinable impairment, we must have objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source that supports a finding that a claimant has DAA. This requirement can be satisfied when there are no overt physical signs or laboratory findings with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant. The acceptable medical source may also consider any records or other information (for example, from a third party) he or she has available, but we must still have the source's own clinical or laboratory findings.

> (ii)      Evidence that shows only that the claimant uses drugs or alcohol does not in itself establish the existence of a medically determinable Substance Use Disorder. . . .  In addition, even when we have objective medical evidence, we must also have evidence that establishes a maladaptive pattern of substance use and the other requirements for diagnosis of a Substance Use Disorder(s) in the DSM. This evidence must come from an acceptable medical source.

SSR 13-2p, 78 Fed. Reg. at 11944.

As support for his determination that DAA was a material contributing factor to Plaintiff's disability, the ALJ cited testimony and exhibits in the record referencing drug and alcohol use by Plaintiff. *See* R. 15-17, 19-21. The ALJ referred to self-reports of alcohol use made by Plaintiff to various medical practitioners, including: (a) in January 2007, while being treated for depression, Plaintiff reported that he "drinks about a six pack a week"; (b) in April 2009, while being treated for hepatitis B and C, Plaintiff reported that he drinks "a little"; and (c) in November 2009, in the course of a clinical interview and mental status exam, Plaintiff reported that he drinks one beer a month. *Id*. at 15-17 (referring to medical records at R. 211, 243, and 400-01). Regarding drug use, the ALJ cited the fact that, from 2000 to 2002, Plaintiff served a prison sentence for possession of a controlled substance. *Id.* at 16, 34. Further, the ALJ referred to a self-report of drug use made by Plaintiff to a medical practitioner, specifically that in May 2010 Plaintiff had engaged in "some drug use after a long period of abstinence." *Id.* at 17 (referring to medical record at R. 437).[6]

This evidence, in and of itself, is inadequate under the Commissioner's policy and guidelines to permit a finding that DAA is a material contributing factor to Plaintiff's disability. Specifically, while self-reports of drug or alcohol use may lead to objective medical evidence of DAA (e.g., a diagnosis of addiction), they do not themselves constitute objective medical evidence. Even if that were not so, the amount of use that may

---

[6] At the hearing, Plaintiff testified that this instance of relapse occurred in 2006, not 2010. R. at 40-41.

reasonably be inferred from Plaintiff's self-reports is not sufficient to support a reasonable inference of a medically determinable substance use disorder.

Here, the record evidence of DAA consists almost entirely of Plaintiff's own statements, made in the context of treatment of other maladies, rather than objective medical evidence of DAA itself. SSR 13-2p states, however, that "[s]elf-reported drug or alcohol use. . . may *suggest* that a claimant has DAA – and may suggest the need to develop medical evidence about DAA" – but, such self-reporting is not "objective medical evidence" and does not by itself establish DAA. SSR 13-2p, 78 Fed. Reg. at 11944 (emphasis added). Similarly, the POMS guidelines provide that a finding of DAA may not be based solely upon the claimant's report of his or her own symptoms or condition, *even if* such a report is repeated by an acceptable medical source. *See* POMS §§ 90070.050(C)(1)(b), 24501.020(A).

Further, the frequency and amount of substance use reflected in the record – consumption of as much as six beers a week and an isolated instance of drug use – are not so great as would by themselves reasonably allow an inference of substance addiction or abuse. Plaintiff's use, alone, of alcohol and drugs is not medical evidence of abuse or dependency. *See* SSR 13-2p, 78 Fed. Reg. at 11941 (the "[o]ccasional maladaptive use" of drugs or alcohol does not establish that a claimant has DAA); POMS § 90070.050(E)(1) ("Evidence that merely shows that the person uses drugs or alcohol does not in itself establish the existence of a medically determinable substance use disorder.").[7] Likewise,

---

[7] Many of the ALJ's findings and conclusions are presented without any cited record support at all. For example, the ALJ broadly concludes without citation: "When the

the fact that Plaintiff was convicted in 2000 of possession of a controlled substance does not

by itself create an inference of substance addition or abuse. *See Upton v. Astrue*, No. CIV-

10-538-W, 2011 WL 1212760, at *3-7 (W.D. Okla. Mar. 2, 2011), *adopted*, 2011 WL

1211525 (W.D. Okla. Mar. 28, 2011) (stating that arrest for possession of marijuana does

not constitute medical evidence that claimant "is addicted to or is dependent upon the use

of marijuana"); *see also* SSR 13-2p, 78 Fed. Reg. at 11944 (an arrest for driving under the

influence does not establish DAA).[8]

What is missing, then, is objective medical evidence from an acceptable medical

source to support a finding that Plaintiff has DAA. The medical practitioners who evaluated

Plaintiff completed various questionnaires marking which signs, symptoms, and applicable

categories of disorders they observed regarding Plaintiff. These practitioners selected

various mental health symptoms and disorders – e.g., "paranoia or inappropriate

suspiciousness," "difficulty thinking or concentrating," "blunt, flat or inappropriate affect,"

---

claimant has abused alcohol and/or drugs, his mental status decompensates, and he is unable to function well until he stops DAA use and is again compliant with treatment." R. 16. If supported by substantial evidence in the record, such a conclusion may be relevant to Plaintiff's DAA status and/or a DAA materiality determination. The undersigned is prevented from meaningful review, however, because there is no indication of what evidence the ALJ relied upon in forming this conclusion. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

[8] The medical records reflecting reports by Plaintiff of substance use also describe that use as "in remission," "in long term remission," or "in full remission." *See, e.g.*, R. at 210, 212-23. While "an ALJ is not required to discuss every piece of evidence," "[t]he record must demonstrate that the ALJ considered all of the evidence," including "uncontroverted evidence he chooses not to rely upon" and "significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-10. The decision does not reflect or indicate that the ALJ considered these descriptions of remission in assessing whether Plaintiff has DAA.

and "affective disorders" – but none checked the box for signs/symptoms of "substance dependence" or "substance addiction disorders." *See* R. 223-24, 405. Thus, the record reflects not only the absence of a diagnosis by a medical practitioner that Plaintiff has a medically determinable substance use disorder, but a strong indication that the medical practitioners who examined Plaintiff rejected that finding.

The undersigned need not reach the question of whether there was substantial evidence to support the ALJ's evaluation of what limitations would remain to Plaintiff if he stopped abusing drugs or alcohol. However, it should be noted that SSR 13-2p provides specific guidance for this type of assessment, particularly where the claimant has a co-occurring mental disorder.[9]

On remand, the ALJ should decide if there is medical evidence of DAA. If not, Plaintiff's burden of proof has been met, and an award of benefits should follow. *See* POMS § 90070.050(E)(2). If there is medical evidence of DAA, the ALJ should evaluate whether Plaintiff would be disabled absent the effects of DAA, following the standards set forth herein and in 20 C.F.R. § 416.935, SSR 13-2p, and POMS 90070.050. On that basis, the ALJ should decide whether DAA is a contributing factor material to Plaintiff's

---

[9] The ALJ's determination of materiality rested in part upon his conclusion that if Plaintiff stopped the substance abuse, Plaintiff would continue to have a severe impairment or combination of impairments. R. 19. The ALJ further stated, "The claimant has been abstinent from alcohol and drugs during times within the relevant adjudicative period. During such times, he continued to be diagnosed with and treated for back pain, migraine headaches, hepatitis, and depression." *Id.* SSR 13-2p indicates, however, that such a conclusion actually would weigh *against* a finding of materiality. SSR 13-2p generally supports the proposition that if a claimant's impairments remain severely limiting during a period of abstinence or remission, the DAA is not material. SSR 13-2p, 78 Fed. Reg. at 11943, 11945; *accord* POMS § 90070.050(D)(3)(c).

disability.

## III. Whether the ALJ erred in the weight he gave to the opinion of Dr. Jawaun Lewis

Plaintiff challenges the ALJ's assignment of "little weight" to the opinions and conclusion of treating physician Jawaun Lewis, D.O. *See* R. 21, 223-28; Pl.'s Br. at 20.

### A. The Treating Physician Rule

The Tenth Circuit long has recognized the proper analysis and assignment of weight to be given to the opinions of treating sources. "An ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (alteration and internal quotation marks omitted). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

By regulation, an examining source's opinion generally outweighs the opinion of a source who has not examined a claimant; it follows that a treating source's opinion generally is given "more weight" than that of a non-treating source pursuant to the "treating physician rule." 20 C.F.R. § 416.927(c)(1)-(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). When considering the opinion of an "acceptable medical source" such as a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins*, 350 F.3d at 1300; 20 C.F.R. § 416.927(a)(2), (c)(2). The opinion of a treating

physician must be given controlling weight if it is *both* well supported by medically acceptable clinical or laboratory diagnostic techniques *and* not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. § 416.927(c)(2).

Even if the medical opinion of a treating physician is not entitled to controlling weight, however, it is still entitled to deference. *See Watkins*, 350 F.3d at 1300. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96–2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1121 (holding that while the absence of objective testing provided a basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled . . . to completely reject [it] on this basis"). The ALJ is obligated to clearly state what weight *is* being given to the opinion and his or her reasoning therefor. *Watkins*, 350 F.3d at 1301. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (internal quotation marks omitted); *see also* 20 C.F.R. § 416.927(c)(2)-(6).

Finally, if an ALJ rejects a treating source opinion altogether, he or she "must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

### B. Application of Treating Physician Rule to Opinions of Dr. Lewis

On April 2, 2009, Dr. Lewis completed a detailed "Mental Impairment Questionnaire (RFC & Listings)" and assigned Plaintiff a current global assessment of functioning, or "GAF," of 55. R. 223 (also calculating 55 as Plaintiff's highest GAF within the past year). "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley*, 373 F.3d at 1123 n.3 (quoting DSM-IV-TR at 32). "A GAF score of 51–60 indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.'" *Id.* (quoting DSM-IV-TR at 34). This GAF score alone does not establish the ultimate issue of disability or prove inability to work. *Cf. Camp v. Barnhart*, 103 F. App'x 352, 354 (10th Cir. 2004) (holding that a GAF score of 50, without evidence it impaired the claimant's ability to work, did not establish an impairment).

In the Mental Impairment Questionnaire, Dr. Lewis noted that Plaintiff had attended bi-monthly psychotherapy sessions from November 2006 "until recently due to health." R. 223. Dr. Lewis identified 14 separate signs/symptoms applicable to Plaintiff and found that Plaintiff had "no useful ability to function" on a day-to-day basis with respect to 17 different work-related activities. *Id.* at 223-24, 226-28. Dr. Lewis opined

that Plaintiff had marked restriction of activities of daily living; extreme difficulties in maintaining social functioning; constant deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner; and continual episodes of deterioration or decompensation in work or work-like settings. *Id.* at 228. The clinical findings Dr. Lewis cites as the basis of his opinion are that Plaintiff experiences increasing depression; feels "empty," sad, hopeless, and useless; and has extreme loneliness, trouble sleeping, confusion, and poor memory. *Id.* at 224. Dr. Lewis further reported that Plaintiff has back injuries that "make sitting and standing for long periods impossible" and that Plaintiff's "disease causes general weakness and fatigue." *Id.* at 228.

Notwithstanding the lengthy relationship between Plaintiff and his treating physician, the ALJ assigned "little weight" to Dr. Lewis' opinions. *See id.* at 21. As explanation, the ALJ relies only on a purported contradiction between the opinions in the questionnaire and Dr. Lewis' treatment notes, stating "Dr. Lewis describes a variety of depressive symptomatology and significant functional restrictions; however, his own treating notes do not contain findings of such." *Id.* The ALJ does not identify the notes or records to which he is referring. *Id*. He then concludes that he has made the requisite finding that deprives Dr. Lewis' opinion of controlling weight. *Id.* ("The Administrative Law Judge finds that Dr. Lewis's opinions regarding functional limitation are not supported by medically acceptable clinical and laboratory diagnostic techniques and are generally inconsistent with the other substantial evidence in the record.").

The ALJ was required to "give good reasons" and be "sufficiently specific" as to his near-rejection of Dr. Lewis' opinions, which Dr. Lewis had formed not merely from his treatment notes but from over two years of personally participating in psychotherapy sessions with Plaintiff. *See id.* at 223; *Watkins*, 350 F.3d at 1300. This he did not do. The ALJ's bare recitation of the diagnostic techniques/substantial evidence criteria does not explain how or why Dr. Lewis' opinions are not entitled to controlling weight.

Further, a review of the record indicates that Dr. Lewis' GAF assessment is neither internally inconsistent with his treating notes nor externally inconsistent with other physicians' assessments. While it is true that the treating notes at times reflect that Plaintiff is "alert and oriented, cooperative and pleasant," R. 209, these same notes show that Plaintiff was being treated by Dr. Lewis pharmacologically with multiple prescriptions during the entire course of their relationship. *See, e.g.*, *id.* at 209-10, 213-19, 225, 450, 456-57 (reflecting prescriptions for Prozac, Trazadone, and Lyrica). Over the course of Plaintiff's treatment, Dr. Lewis observed: problems sleeping, lethargy, constricted affect, visible indications of pain, severe/significant pain, significant medical problems, and poor eye contact with a blunted affect. *Id.* at 208-10, 213-19, 434-35, 438-39, 450, 456-57, 499, 501-02.

The ALJ's decision does not explain adequately how a GAF score of 55, reflecting moderate symptoms (e.g., "flat affect and circumstantial speech" and panic attacks, *see* DSM-IV-TR at 34) or moderate difficulty in occupational or social functioning, and the remaining conclusions of the Questionnaire are so obviously inconsistent with the treating notes as to strip Dr. Lewis' opinion of controlling weight. *Cf. Salazar*, 468 F.3d

at 625 (emphasizing the distinction between a patient's status in a sheltered treatment environment and her abilities in an independent work environment). Indeed, the Tenth Circuit has reversed the rejection of a treating physician's opinion, premised upon an alleged contradiction with the physician's treating notes, when the physician had maintained a consistent diagnosis and the alleged contradiction was not significant. *See Zemp-Bacher v. Astrue*, 477 F. App'x 492, 496 (10th Cir. 2012). In *Zemp-Bacher*, the appellate court explained: "We do not see how the doctor's opinion [which indicated 'moderate limitations in numerous areas of mental functioning'] is inconsistent with the treatment records relied on by the ALJ , which note that [claimant] was appropriate and oriented at semi-frequent psychiatric appointments, especially since the doctor never altered her initial diagnosis." *Id.*; *see also Vallory v. Colvin*, No. CIV-12-75-HE, 2013 WL 1340493 (W.D. Okla. Feb. 22, 2013), *adopted*, 2013 WL 1340498 (W.D. Okla. Mar. 31, 2013) (holding that the ALJ's reliance on treatment notes from only four out of thirteen visits is not a specific, legitimate reason to reject the opinions of claimant's treating psychiatrist).

Further, a GAF score of 55 appears to be entirely consistent with the substantial evidence in the record, as at least three other sources likewise calculated Plaintiff's GAF score to be within the 51-60 "moderate symptoms or moderate difficulty in functioning" range. In January 2007, Dr. Vivian Hasbrook assessed a current GAF of 55, with 55 also being Plaintiff's highest score within the past year. R. 212. Dr. Hasbrook also diagnosed Plaintiff with major depression and made a "[g]uarded" prognosis, expressing concern that "the constant pain he is dealing with will become a negative contributor to his

already present depression." *Id.* In November 2009, consulting psychologist Kara Rodgers, Psy.D., assessed a GAF of 53 and noted that Plaintiff was reporting panic attacks and "seems to be functioning poorly on a psychological basis." *Id.* at 400-01. And, in February 2012, a mental health practitioner at the Oklahoma Department of Mental Health and Substance Abuse Services assessed a GAF of 55 for Plaintiff. *Id.* at 547.

Finally, even assuming that the ALJ properly found that Dr. Lewis' opinion was not entitled to controlling weight, the opinion was still entitled to deference, and the ALJ was required under controlling regulations and Tenth Circuit precedent to follow through with the remainder of the analysis and weigh that opinion using the six factors outlined in 20 C.F.R. § 416.927. *See Watkins*, 350 F.3d at 1300; *Langley*, 373 F.3d at 1123. There is no indication that the ALJ's decision to give the opinion "little weight" resulted from or was informed by this mandatory weighing.[10] Under these circumstances, the ALJ's cursory dismissal of Dr. Lewis' medical opinions and GAF score is reversible legal error.[11]

---

[10] Plaintiff also claims error in the ALJ's treatment of the opinion of treating physician G.C. Miller, M.D. *See* Pl.'s Br. at 7, 13. "On remand, the ALJ should take care to avoid other errors claimed by" Plaintiff and should consider treating sources' opinions under the framework outlined herein. *See Zemp-Bacher v. Astrue*, 477 F. App'x at 496.

[11] Plaintiff's third contention of error is that the ALJ's conclusion was not supported by substantial evidence because the ALJ relied on vocational expert testimony that was based on a faulty hypothetical premise. *See* Pl.'s Br. at 12-16. Plaintiff argues that the ALJ's hypothetical was deficient because, *inter alia*, the question did not explicitly describe the "moderate" effect of Plaintiff's non-exertional limitations, specifically Plaintiff's mental impairments as indicated by his GAF scores of 50 to 55. Because reversal is recommended for further consideration of evidence speaking to Plaintiff's GAF assessments as outlined above, the undersigned need not address this argument.

**IV.    Whether the ALJ erred in his assessment of Plaintiff's credibility**

Plaintiff contends that the ALJ erred by failing to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of physical pain to substantial evidence in the record.  Pl.'s Br. at 17-19.  This argument implicates the framework for the proper analysis of a claimant's evidence of pain first set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

The ALJ determined that Plaintiff's statements regarding "his impairments and their impact on his ability to work are not entirely credible" and that Plaintiff "is not entirely credible concerning the symptoms and limitations associated with his back problems."  R. 17.  The ALJ stated that he based his credibility findings regarding Plaintiff's impairments' impact on his ability to work on "the medical history, the reports of the treating and examining practitioners, the findings made on examination, descriptions of his activities and life style, and the claimant's demeanor at hearing."  *Id.*

Specifically, regarding Plaintiff's back impairments, the ALJ explained that while Plaintiff's back injury reasonably would be expected to produce the *type* of pain alleged, Plaintiff's complaints "suggest a greater severity of impairment than is shown by the objective medical evidence."  *Id.* at 17-18.  The ALJ further noted that the "mere existence of pain and discomfort" is not dispositive in a disability case.  *Id.* at 18.  The ALJ provided specific examples of Plaintiff's daily activities, noting that he continues to engage in a variety of activities although they are "decreased by his impairments."  *Id.* at 17 (referencing Plaintiff's own statements that he can lift up to 20 pounds; is able to mow

the lawn, albeit with many breaks to relieve his fatigue from hepatitis; can go to his medical appointments alone; can accompany his mother to her medical appointments; and is able to shop for household needs, do light household repairs, and help his mother with her bills and medication). The ALJ also discussed other evidence that was presented, including Plaintiff's physical and mental health diagnoses and treatment and the treating notes of his physicians. *Id.* at 14-18, 21-22.

Viewed in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *See Wilson*, 602 F.3d at 1144-45. The Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Reversal on this point is not warranted.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by February 14, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives

the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 31st day of January, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE